UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALIK BENASIDE RAY-EL,

                Petitioner,                  Case Number: 18-13037
                                                Honorable David M. Lawson
v.

JAMES SCHIEBNER,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

A Wayne County, Michigan jury convicted petitioner Malik Ray-El of assault with intent to commit murder and possession of a firearm during the commission of a felony (felony-firearm) after it determined that he was one of the persons that shot Deandre Banks while Banks was sitting in his parked car. Banks was wounded in the leg. Ray-El was sentenced to a lengthy prison term. After finding no relief in the state appellate courts, Ray-El filed a petition for a writ of habeas corpus in this Court raising multiple claims. At his request, the petition was held in abeyance so Ray-El could return to state court to raise three additional claims. When those were rejected, Ray-El returned to this Court and added those three claims to his original petition. None of them, however, merit habeas relief. The petition will be denied.

I.

In February 2014, Ray-El and Denoria Smith fired multiple gunshots at a vehicle operated by Deandre Banks while he was parked at a housing complex in Detroit, Michigan, intending to meet two teenage boys who were selling some cell phones. When the shots were fired, Banks drove away, but he suffered a gunshot wound to his leg. Ray-El and Smith were jointly tried

before a single jury in the Wayne County, Michigan circuit court. In its opinion on direct appeal,

the Michigan Court of Appeals summarized the facts that came out at trial:

> Deandre Banks drove to a housing complex where Brittany Rogers lived. His stated reason for being there was to meet two teenage boys who were selling some cell phones. Banks testified that while he was in his car talking to the two boys, two men entered the parking lot together and then split up, one approaching the front and one approaching the rear.
>
> A surveillance video of the parking lot showed one man, whom Rogers identified as Ray-El, approaching the driver's side of Banks's car. Banks said that that man fired a gun at him and he (Banks) drove off. The video showed the man identified as Ray-El firing a shot, falling, getting up, and then firing several more shots at Banks's car as Banks drove away. Banks testified that he could hear a different gun firing at him as he drove away. The surveillance video showed Banks driving away to the left and gunshots could be heard after Ray-El lowered his arm and turned away from the vehicle, which indicated that a second gunman was present. Evidence showed that Banks's car was struck at least three times and Banks himself suffered a gunshot wound to the leg. The surveillance video showed the visible gunman — identified as Ray-El — and the two boys all running off to the right. Moments later, a fourth person, whom Rogers identified as Smith, entered camera range from the left and ran after the other three. Rogers testified that moments after she heard the gunshots, Smith, Ray-El, and the two boys ran into her home and Ray-El had a gun in his hand.

*People v. Ray-El,* No. 326808, 2016 WL 4251091 at *2 (Mich. Ct. App. Aug. 11, 2016).

The jury convicted Ray-El of assault with intent to commit murder and possession of a

firearm during the commission of a felony (felony-firearm). He was sentenced to 23 to 50 years

in prison for his assault conviction plus a consecutive two-year prison term for the felony-firearm

conviction. The Michigan Court of Appeals affirmed his convictions on direct appeal, *id.* at *1,

and the Michigan Supreme Court denied leave to appeal, *People v. Ray- El*, 500 Mich. 1020, 896

N.W.2d 431 (2017). Ray-El filed his original habeas corpus petition on September 24, 2018 in

which he raised seven claims. After the petition was held in abeyance at his request, he returned

to state court and presented three more claims, all of which were rejected by the trial court. The

Michigan Court of Appeals denied Ray-El's delayed application for leave to appeal. *People v.*

*Ray-El*, No. 357665 (Mich. Ct. App. Sept. 28, 2021) (unpublished).  Ray-El did not seek an appeal in the Michigan Supreme Court.

Ray-El returned to this Court and filed an amended petition asserting those three claims plus the original seven.  The claims before the Court are summarized as follows:

I.      The trial court deprived the petitioner of a fair trial by .admitting irrelevant and prejudicial prior bad acts evidence.

II.     The trial court should have granted the petitioner's motion for a directed verdict because the evidence was insufficient to support a conviction of assault with intent to commit murder.

III.    The trial court erred by denying the petitioner's motion *in limine* to preclude irrelevant and otherwise unfairly prejudicial photographic evidence.

IV.    The trial court erred by denying the petitioner's motion to suppress all evidence flowing from the use of GPS tracking technology because the warrantless use of such technology violated the petitioner's Fourth Amendment rights.

V.      Trial counsel was constitutionally ineffective where he failed to conduct a reasonable investigation into the relevant facts and circumstances, when he failed to contact and interview critical eyewitness and persons who had valuable information relating to his client's innocence, and such unreasonable investigation deprived the petitioner of his constitutional right to present a substantial defense.

VI.    The prosecutor's misconduct was manifest where government agents (police officers) coerced, harassed, intimidated, and pressured the victim to offer inaccurate and misleading evidence implicating an innocent party to a crime where the victim had no knowledge who perpetrated the crime against him; and the petitioner was subjected to malicious prosecution by state agents.

VII.   The petitioner was deprived of his constitutional right to a fair trial as guaranteed by the Fifth Amendment by a multiplicity of errors having a cumulative effect on the jury verdict such that due process and equal protection of the law was denied, contrary to U.S. Const. Ams. V, VI, XIV.

VIII.  The trial court violated the petitioner's due process rights under *People v. Beck*, 504 Mich. 605, 939 N.W.2d 213 (2019) by considering acquitted conduct during sentencing.

IX.    Trial counsel was ineffective because he failed to investigate and call certain witnesses.

X.   Appellate counsel was ineffective by failing to raise the sentencing and ineffective assistance of counsel issues on direct appeal.

ECF No. 1, PageID.5, 6, ECF No. 21-2, PageID.1658-1664.

The warden filed an answer to the petition raising the defenses of procedural default and untimeliness. The "procedural default" argument is a reference to the rule that a petitioner must preserve properly his claims in state court, and if he fails to do so the state court's ruling denying relief on that basis is an adequate and independent ground for under state law that must be respected here. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The untimeliness argument references the requirement that a habeas petitioner must bring his claims within one year of the date his conviction becomes final. *See* 28 U.S.C. § 2244(d)(1). In this case, although the petition was stayed in this Court, Ray-El did not file his post-conviction motion in state court until after the one-year statute of limitations expired. The warden reasons that those new claims are all untimely because there was no limitations period to toll by the time the post-conviction motion was filed. *See Hargrove v. Brigano*, 300 F.3d 717, 718 n.1 (6th Cir. 2002) (holding that a state court post-conviction motion that is filed after the limitations period expires cannot toll that period because there is no period remaining to be tolled); *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) (holding that the AEDPA's limitations period does not begin to run anew after the completion of state post-conviction proceedings). The Court finds it unnecessary to address these procedural defenses. They are not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (procedural default); *Smith v. State of Ohio Dept. of Rehab.*, 463 F.3d 426, 429, n.2 (6th Cir. 2006) (statute of limitations), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520

-4-

U.S. 518, 525 (1997)). These procedural defenses will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). AEDPA provides a "highly deferential standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

### A.

In claim one and claim three, Ray-El challenges two evidentiary rulings by the state trial court. He contends that the court violated his due process rights by admitting evidence of other, uncharged criminal conduct. And he says that the court erred by admitting photographs of Ray-El in or near a red pickup truck like the one seen on the surveillance camera footage of the crime scene.

The other "bad acts" evidence consisted of two robberies that were committed the day after the shooting incident. To prove that Ray-El was involved in the shooting, the prosecution presented evidence that Ray-El and his co-defendant robbed two Wayne State University students of their cellphones and other personal items the day after the shooting. The evidence showed that shortly after the robberies, Ray-El and his co-defendant returned to Brittany Rogers's house — the same house they entered after they shot at Banks in the parking lot. The Michigan Court of Appeals concluded that "the evidence made it more likely that the persons who fled the scene of the shooting . . . were the same persons who entered Rogers's house moments later; therefore, it tended to prove Smith and Ray-El's identity as Banks's shooters. The evidence was thus relevant and probative for reasons other than their propensity for criminal behavior." *Ray-El*, 2016 WL 4251091 at *4.

An alleged violation of state evidence Rule 404(b) is not cognizable on habeas review. "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Admission of evidence that a defendant committed a criminal act other than the charged offenses is not fundamentally unfair, particularly when it is not offered to prove the defendant's general bad character or propensity to commit the charged crime.

The state courts viewed that other-acts evidence as tending to prove Ray-El's identity as one of the shooters, not to establish his general bad character. They concluded that the identity of the shooters was a critical issue during trial and viewed the robberies as tending to prove that Ray-El was one of them. Both courts concluded that evidence of the robberies was properly admitted under state evidentiary rules. The prosecutor did not make a propensity argument. But even if he had made such an argument, the Supreme Court has declined to hold that similar other-acts evidence is so extremely unfair that its admission violates fundamental conceptions of justice, *Dowling v. United States*, 493 U.S. 342, 352-53 (1990), although it has found "no question that propensity would be an 'improper basis' for conviction," *Old Chief v. United States,* 519 U.S. 172, 182 (1997). Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling*, 493 U.S. at 352. Put more directly, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003); *see also* Fed. R. Evid. 413 and 414 (allowing such evidence in federal criminal trials involving sexual misconduct).

Ray-El is not entitled to habeas relief on this claim.

The state courts determined that the challenged photographs were relevant.  According to the state court of appeals, "[o]ne photo shows Ray-El and another person standing by a red Sierra pickup truck, another photo shows the truck by itself, and a third photo shows Ray-El sitting in a vehicle with a handful of money and a gun on his lap." *Ray-El*, 2016 WL 4251091 at *6.  The Michigan Court of Appeals determined that the photographs' prejudicial effect did not substantially outweigh their probative value. *Ibid*.

Again, Ray-El's claim here presents a state evidentiary issue for which federal habeas corpus relief is not available.  The Court may not grant the writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Even the admission of gruesome photographs of the decedent in a murder case is not a cognizable claim in a habeas corpus proceeding. *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997).  Such claims do not "present a question of constitutional magnitude," *Pearl v. Cason*, 219 F. Supp. 2d 820, 830 (E.D. Mich. 2002), and the admission of gruesome photographs of a victim does "not deprive a criminal defendant of a fair trial," *Skrzycki v. Lafler*, 347 F. Supp. 2d 448, 455 (E.D. Mich. 2004).

State courts "have wide latitude with regard to evidentiary matters under the Due Process Clause." *Wilson v. Sheldon*, 874 F.3d 470, 476 (6th Cir. 2017).  A trial court's evidentiary error does not rise to the level of a federal constitutional claim warranting habeas corpus relief unless the error rendered the proceeding fundamentally unfair. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).  Ray-El has not shown that the evidentiary decision was so extremely unfair that admission of the photographs violate fundamental conceptions of justice. *See Dowling*, 493 U.S. at 352.  The Michigan Court of Appeals ruled that the first two photographs depicting the red truck were relevant because they connected Ray-El to the truck. *Ray-El*, 2016 WL 4251091 at *6.  The

court of appeals ruled that the third photograph, although portraying Ray-El in a bad light, "was not so inflammatory as to distract the jury from its duties and thus its prejudicial effect did not substantially outweigh its probative value." *Ibid*.  The court's ruling was reasonable and did not violate fundamental conceptions of justice.

Ray-El is not entitled to habeas relief on this claim either.

### B.

In claim two, Ray-El argues that the trial court erred by denying his motion for a directed verdict because the evidence was insufficient to support the conviction for assault with intent to commit murder.  The Michigan Court of Appeals rejected that claim on direct review, based in part on the prosecution's presentation at trial of a surveillance video that "showed the man identified as Ray-El firing a shot, falling, getting up, and then firing several more shots at Banks's car as Banks drove away."  *Ray-El*, 2016 WL 4251091 at *2. The prosecution also presented witness testimony indicating that Ray-El was present during the shooting.  *Ibid*.  The court of appeals concluded that this evidence established that Ray-El was one of the shooters and that he intended to kill Banks.  The court concluded:

> The evidence that Smith and Ray-El intentionally shot at someone within range and under circumstances that did not justify, excuse, or mitigate the shooting, was sufficient to prove assault with intent to commit murder.  It was also sufficient to prove an assault with the intent to do great bodily harm.  Therefore, there was sufficient evidence to establish that Smith and Ray-El in fact possessed firearms, shot at Banks, and did so with the requisite intent.  Consequently, there was sufficient evidence to support their convictions and the trial court did not err when it denied the motion for a directed verdict.

*Ibid*. (citations omitted).

The controlling Supreme Court authority governing this issue is *Jackson v. Virginia*, 443 U.S. 307 (1979), and *In re Winship*, 397 U.S. 358 (1970).  In *Winship*, the Court confirmed that "the Due Process Clause protects the accused against conviction except upon proof beyond a

reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364. And in *Jackson*, the Court stated that the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." 443 U.S. at 318. A federal court reviewing a state court conviction under the habeas corpus statute that is "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

On direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. For habeas corpus, that rubric "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Under Michigan law, to prove the crime of assault with intent to commit murder, the prosecution must offer evidence of "(1) an assault, (2) with the specific intent to commit murder, (3) which, if successful, would make the killing murder." *People v. Beard*, 171 Mich. App. 538, 541, 431 N.W.2d 232, 233 (1988)). The prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Oliphant*, 399 Mich. 472, 489, 250

N.W.2d 443 (1976); *People v. Yost*, 278 Mich. App. 341, 356, 749 N.W.2d 753, 767 (2008); *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216, 218 (1967).  State law permits proof by direct or circumstantial evidence and reasonable inferences arising from that evidence.  *People v. Nowack*, 462 Mich. 392, 399-400, 614 N.W.2d 78, 81-82 (2000); *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177, 180 (1993).  That included the identity of the perpetrator, *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002); *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d. 216, 218 (1967), and intent or state of mind, *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31, 34 (1997).  And under state law, the use of a lethal weapon supports an inference of an intent to kill.  *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617, 619 (1975).

The Michigan courts' holding that sufficient evidence supported Ray-El's conviction amounted to a reasonable application of controlling federal law and a reasonable determination of the facts presented at trial.  The evidence presented at trial, viewed in a light favorable to the prosecution, established that Ray-El was present at the scene and fired a gun at Banks.  Brittany Rogers testified that she had lived at a residence in the housing complex where the incident occurred.  ECF No. 9-13, PageID.703.  She testified that she heard gunshots the morning of the incident.  *Id*. at 706.  Shortly after hearing the gunshots, Rogers testified that Ray-El, Smith, and two teenage boys ran into her house.  *Id*. at 710.  The two teenage boys appeared terrified.  *Id*. at 714.  She further testified that Ray-El had a gun in his hand, pointed in her direction.  *Id.* at 718.  When Rogers asked Ray-El, "Why when he do things do he bring it back to [her] house," Ray-El replied that he knew where she lived.  *Id.* at 716-717.  When shown the surveillance video, Rogers identified Ray-El as being one of the individuals present in the parking lot during the shooting.  *Id.* at 724.  Looking at the video, she testified that Ray-El drove a red pickup truck, which she observed

backing out of the parking lot.  *Id.* at 730-732.  This testimony, if believed, was sufficient to allow a proper inference that Ray-El was involved in the shooting.

Second, the evidence demonstrated that Ray-El's conduct satisfied each element of the crime.  Deandre Banks testified that while he sat in his car discussing the purchase of the cell phones with the two boys, two other individuals approached his car.  *Id.* at 666.  One individual came toward the front of the vehicle and the other walked behind it.  *Id.* at 667-668.  One of the individuals wore a ski mask and fired gunshots at the vehicle.  *Id.* at 668.  Banks testified that the individual behind the vehicle also fired gunshots at him.  *Ibid.*  Banks testified that he heard somewhere between 7 to 15 gunshots and saw the muzzle flash from a gun.  *Id.* at 669, 696.  Banks testified that he was shot in his left leg and that he was unarmed at the time of the shooting.  *Id.* at 670, 676.  Banks observed two bullet holes on the vehicle's drive side door and one bullet hole on the rear bumper.  *Id.* at 677-678.  The surveillance video of the parking lot also showed two gunmen present at the scene.  Based on the witness testimony and the surveillance video, a rational fact finder could reasonably infer that Ray-El had the requisite intent to kill by intentionally pointing a gun at the unarmed victim at close range and firing the gun multiple times without justification.  These facts support a conviction of assault with intent to commit murder.

Ray-El is not entitled to habeas relief on this claim.

## C.

In claim four, Ray-El argues that his Fourth Amendments rights were violated when the police used phone-tracking technology without a warrant to locate a stolen cellphone, which was subsequently found on his co-defendant's person.  This claim will not be addressed on the merits, because Ray-El cannot overcome the obstacle created by *Stone v. Powell*, in which the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth

Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494-95 (1976).

The Sixth Circuit Court of Appeals employs a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quotation marks omitted).

Michigan provides ample opportunity for litigation of Fourth Amendment claims. Typically, such claims are addressed by means of a motion to suppress filed before trial. See *People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W.2d 357, 358-59 (1965) (holding that motions to suppress must be brought timely where the factual circumstances constituting the illegal arrest or seizure are known to the defendant in advance of trial).

Ray-El availed himself of this opportunity when he submitted his motion to suppress before the trial court. The trial court denied the motion, and the Michigan Court of Appeals affirmed on appeal. The Michigan Court of Appeals concluded that no Fourth Amendment violation occurred because "neither Smith nor Ray-El had a reasonable expectation of privacy in information transmitted by [a] stolen phone." *Ray-El*, 2016 WL 4251091 at *7. That is enough to satisfy *Powell*'s "opportunity" requirement. *See Good v. Berghuis,* 729 F.3d 636, 639 (6th Cir. 2013) (stating that "[t]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim"). Because Ray-El had a full and fair opportunity to litigate his Fourth Amendment claim, habeas review is precluded.

-13-

Ray-El is not entitled to habeas relief on this claim.

### D.

In claims five, nine, and ten, Ray-El argues that his trial and appellate attorneys were constitutionally ineffective. He says that his trial lawyer failed to do the following: conduct a reasonable investigation into the relevant facts and circumstances of the case, interview and call certain witnesses, use witness statements and police reports to impeach the witnesses' testimony, and request a bill of particulars. He says his appellate lawyer should have raised these issues on direct appeal and also should have raised a sentencing error as well.

The state court of appeals addressed most of these claims on direct review, applying state precedent that tracked the governing federal law. A federal habeas petitioner asserting a violation of his Sixth Amendment right to the effective assistance of counsel must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that 'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). And where the challenged conduct amounts to legitimate trial strategy, habeas courts will not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012).

-14-

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)).  Under AEDPA, obtaining relief under *Strickland* is even more challenging because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).  This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).  "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

1.

Ray-El's argument that defense counsel failed to adequately investigate, interview, and call certain witnesses was raised on direct appeal and in a post-conviction motion.  The Michigan Court of Appeals rejected this argument on direct appeal, reasoning as follows:

> Ray-El contends that his lawyer was ineffective for failing to call various persons who were in Rogers's house on the night of the shooting ostensibly because they could have provided exculpatory testimony. . . . The record shows that Martez Fulton, one of the four persons whom Ray-El contends his lawyer should have

-15-

called, was not at Rogers's house on the night of the shooting, but was there the following night when Rogers was arrested.  As for the other witnesses, there is nothing in the record to suggest what they might have testified about had they been called.  Thus, there is no basis for concluding that any of the four witnesses could have contradicted the prosecution's case or provided Ray-El with testimony favorable to the defense.  Accordingly, the record does not support Ray-El's claim that counsel was ineffective for failing to investigate and call the witnesses.

*Ray-El*, 2016 WL 4251091 at *8.

That ruling is consistent with the governing federal law summarized above.  There is no question that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Rayner v. Mills*, 685 F.3d 631, 640 (6th Cir. 2012) (citing *Strickland*, 466 U.S. at 691).  But when evaluating counsel's decisions whether to investigate, a court must "apply[] a heavy measure of deference to counsel's judgments."  *Wiggins*, 539 U.S. at 522 (citing *Strickland*, 466 U.S. at 690-91).  When a habeas petitioner predicates an ineffective-assistance-of-counsel claim on a failure to call a witness, he must provide the substance of the missing witnesses' potential testimony.  *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).  Without that, a petitioner cannot establish that his counsel performed deficiently or that he was actually prejudiced.  *Ibid*. (citing *Stewart v. Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006)).  Here, Ray-El identified six prospective witnesses that he believes would have testified favorably to the defense.  But the substance of their testimony was based only on his summary.  He did not fortify his own assertions with any affidavits or witness statements.  That does not meet the requirements of *Strickland* or *Clark*.  *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petition did not "introduce[ ] affidavits or any other evidence establishing what they would have said.").

Ray-El's argument that his attorney failed to investigate these witnesses is contradicted by the record.  Defense counsel stated to the trial court that the prosecutor had an open file and turned

over all evidence.  ECF No. 9-12, PageID.431.  He also stated that he investigated the four witness that Ray-El identified and most declined to testify on Fifth Amendment grounds.  *Ibid*.  Because of the potential difficulties with those witnesses and the unavailability of one alibi witness, Latrina Hill, counsel's decision not to call additional witnesses amounted to reasonable trial strategy.  And Ray-El does not state whether the other witnesses were known to counsel or the prosecution at the time of trial.   The record in this Court fails to rebut the "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Ray-El is not entitled to habeas relief on this claim.

2.

The Michigan Court of Appeals rejected Ray-El's argument that defense counsel was ineffective by failing to use witness statements and police reports to impeach the witnesses' testimony.  The court reasoned that Ray-El had "not offered anything to show that any statements or police reports contained any information of impeachment value that was not utilized at trial." *Ray-El*, 2016 WL 4251091 at *8.  That ruling also tracked federal law.  Ray-El has not identified any meaningful areas where counsel's cross-examination fell below an objective standard of reasonableness.  His conclusory assertions of ineffective assistance are insufficient to warrant habeas relief.  *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (rejecting ineffective assistance of counsel claim where habeas petitioner "provide[d] no support for th[e] claim" and allegation was "merely conclusory").

3.

The state court rejected Ray-El's argument that his attorney erred by failing to request a bill of particulars because it believed that Ray-El's "preliminary examination testimony fulfilled

-17-

the function of informing [him] of 'the nature and the elements of the charges against him,' thus obviating the need for a bill of particulars." *Ray-El*, 2016 WL 4251091 at *8 (quoting *People v Jones*, 75 Mich. App. 261, 270; 254 N.W.2d 863, 867 (1977)).  That decision was reasonable.

A bill of particulars may be necessary in some cases to afford the defendant adequate notice of the charge he is facing.  That is not the case here, where Ray-El adequately was informed of the charges against him through the preliminary examination, where the state district court found probable cause to believe that he committed the charged crimes.  *See* Mich. Ct. R. 6.112(E); *People v. McBride*, 204 Mich. App. 678, 681, 516 N.W.2d 148, 150 (1994).  Counsel was not ineffective by not demanding a bill of particulars and the state court reasonably rejected the claim.

4.

Ray-El's argument that his appellate attorney performed deficiently by not asserting these claims about trial counsel's performance fails for the same reason.  It is true that the Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel.  *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985); *Halbert v. Michigan*, 545 U.S. 605, 609-10 (2005).  But court appointed appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  A habeas court reviewing an ineffective-assistance-of-appellate-counsel claim must defer twice: first to appellate counsel's decision not to raise an issue, and secondly, to the state court's determination that appellate counsel was not ineffective.  *Woods v. Etherton*, 578 U.S. 113, 119 (2016) (per curiam).

Ray-El's appellate attorney did not perform deficiently by not arguing that trial counsel was ineffective in the various ways discussed above.  As noted earlier, there was no deficient performance by trial counsel on that score.  "[A]ppellate counsel cannot be found to be ineffective

-18-

for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Ray-El also criticizes his appellate attorney for not arguing on appeal that the trial court improperly considered acquitted conduct when imposing the sentence. The substantive version of that argument comprises claim eight. But that claim also lacks merit.

Before Ray-El was tried for the assault and firearm crimes in this case, he was tried for two armed robberies for which the jury could not return a verdict. ECF No. 21-3, PageID.1667. He contends that the mistrial precluded the trial court from considering the robberies when scoring the Michigan sentencing guidelines. He relies on the Michigan Supreme Court's holding in *People v. Beck*, 504 Mich. 605, 939 N.W.2d 213 (2019), "that due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *Id*. at 629, 939 N.W.2d. at 227.

But Ray-El was not acquitted of the armed robberies. Because of that reality, the trial court reasonably determined that *Beck* did not apply. An acquittal in these circumstances required a unanimous not-guilty jury verdict; however, no verdict was reached. Finally, Ray-El's appellate counsel was not ineffective by failing to raise a meritless sentencing claim. *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008).

And that claim as a substantive habeas issue fails for different reasons. Claims that arise from a state trial court's sentencing decision are not cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Here, the sentencing decision was authorized by the law. For the reason discussed above, the trial court's decision to consider the two robbery charges was proper. Also, federal precedent "permits reliance

on acquitted conduct during sentencing."  *United States v. Peterson*, 840 F. App'x 844, 855 (6th

Cir. 2021).  A sentencing court may consider acquitted conduct if it was proven by a preponderance

of the evidence.  *United States v. White*, 551 F.3d 381, 383-84 (6th Cir. 2008).  At sentencing, the

trial court found "by a preponderance of the evidence that Mr. Ray-El committed the two armed

robberies that he was charged with in the other case and which resulted in a hung jury."  ECF No.

9-18, PageID.1122.  Because Ray-El has failed to demonstrate constitutional error, habeas relief

is precluded on this claim.

E.

In claim six, Ray-El argues that the prosecutor engaged in misconduct by coercing false

and inaccurate witness testimony during trial.  He says that the police coerced Deandre Banks into

testifying against him at trial and that conduct is imputed to the prosecution.

The Supreme Court has stated that prosecutors must "refrain from improper methods

calculated to produce a wrongful conviction."  *Berger v. United States*, 295 U.S. 78, 88 (1935).

The Supreme Court has also made clear that the "deliberate deception of a court and jurors by the

presentation of known false evidence is incompatible with the rudimentary demands of justice."

*Giglio v. United States*, 405 U.S. 150, 153 (1972).  Therefore, "a conviction obtained by the

knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any

reasonable likelihood that the false testimony could have affected the judgment of the jury." *United

States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S.

264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

The Michigan Court of Appeals considered this issue on plain error review and denied

relief, explaining:

> Ray-El's last unpreserved claim of prosecutorial error is based on Banks's
> testimony that he was reluctant to assist the police officers in their investigation of

-20-

the shooting and gave them a false statement so they would leave him alone. . . .
The record shows that Banks may have been pressured to cooperate in the
investigation, but there is nothing in the record to show that it had any effect that
would amount to a denial of Ray-El's due process rights.  There could not have
been witness intimidation of the type involved in *People v Crabtree*, 87 Mich App
722; 276 NW2d 478 (1979), because Banks never denied that he was shot, but
always maintained that he could not identify the shooters.  Nor is there anything in
the record to suggest that Banks was intimidated into providing testimony that was
untrue.  Although Banks's credibility was called into question by his admission that
he lied to the officers, that information was elicited by counsel for the jury's
consideration.  Because the record does not support Ray-El's claim of prosecutorial
error in the form of witness intimidation, Ray-El's related claim of ineffective
assistance of counsel is also meritless.

*Ray-El*, 2016 WL 4251091 at *8 (citations omitted).

That ruling did not contravene and reasonably applied clearly established federal law.  Ray-

El bases his argument on the testimony of Deandre Banks, who said that during the police

investigation, he initially provided the police with a false statement that he went to the housing

complex to visit his sister and did not say that he was there to purchase two phones.  ECF No. 9-

13, PageID.680, 697.  Banks testified that he provided a false statement so that the police would

"stop coming to [his] house."  *Id*. at PageID.681.  Although Banks may have been reluctant to

assist the police in their investigation, there is nothing in the record that suggests he was coerced

into providing false testimony.  In fact, his testimony regarding the incident was consistent

throughout the trial and corroborated by the surveillance video.  Banks maintained throughout the

trial that he had been shot in the leg but was unable to identify his shooters, which he initially told

police.  Ray-El has not shown coercion by state agents, and he has not established that the state

coerced Banks into providing false testimony.

Ray-El's derivative claim that trial counsel was ineffective by failing to cross-examine the

witness on this issue likewise is unsupported by the record.  Defense counsel explored on cross-

examination Banks's credibility, false statement, and involvement in the investigation and the jury

had the opportunity to consider it.  Ray-El has not shown how any additional cross-examination

would have changed the outcome of the trial.  His conclusory allegation of ineffective assistance does not warrant federal habeas relief.  *Workman*, 178 F.3d at 771.

Ray-El is not entitled to habeas relief on either claim.

### F.

Finally, in claim seven, Ray-El argues that the cumulative effect of the alleged errors rendered his trial unfair.  The Michigan Court of Appeals rejected that argument on direct review. *Ray-El*, 2016 WL 4251091 at *9.

Under AEDPA, that argument cannot succeed because the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *see Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *see also Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012) (ruling that a cumulative error claim was not cognizable) (citing *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010)).

Habeas relief is not warranted on this claim.

### III.

The petitioner's claims do not present a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d).  The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 6, 2023